# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LARNELL C. COLLINS,

          Plaintiff,

    v.

CONALL McCABE, et al.,

          Defendants.

**1:19-cv-00458-AWI-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED**
**(ECF No. 29.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.    BACKGROUND

Larnell C. Collins ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds with Plaintiff's Complaint filed on April 9, 2019, against defendants Dr. Conall McCabe and Dr. O. Beregovskaya,[1]  ("Defendants") for failure to provide adequate medical care in violation of the Eighth Amendment. (ECF No. 1.)[2]

---

[1] Sued as Beregouskaya.

[2] On August 10, 2020, the Court issued an order dismissing all other claims and defendants from this case based on Plaintiff's failure to state a claim.  (ECF No. 13.)

1

On August 30, 2021, Defendants filed a motion for summary judgment.  (ECF No. 29.) On March 17, 2022, Plaintiff filed an opposition to the motion.[3]  (ECF Nos. 38-40.)  On May 31, 2022, Defendants filed a reply to the opposition.  (ECF No. 46.)  Pursuant to Local Rule 230(*l*), this motion is now before the court.

For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be granted.

## II.        SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  Id.  This requires

---

[3] Together with the motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 29 at 2-3.)

Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.   PLAINTIFF'S ALLEGATIONS -- COMPLAINT[4]

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California. The events at issue in the Complaint allegedly occurred when Plaintiff was incarcerated at Corcoran State Prison in Corcoran, California in the custody of the California Department of Corrections and Rehabilitation (CDCR).  This case is now proceeding against Defendants Dr. Conall McCabe and Dr. O. Beregovskaya.

A summary of Plaintiff's allegations follows:

On March 18, 2014, Dr. Wang [not a defendant] submitted a request for Plaintiff to be

---

[4] Plaintiff's Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

examined for chronic knee problems. On March 25, 2014, Plaintiff was examined by Orthopedic Specialist and Surgeon Dr. D. Smith [not a defendant]. Plaintiff explained that his left knee was in poor condition and causing him pain despite previous surgeries. Plaintiff told Dr. Smith that his knee constantly gives out, there is a painful burning/tearing sensation in the middle of the knee, painful pressure from swelling makes it difficult to walk, there is a painful popping inside, and it hurts to bend or extend the knee or walk. Dr. Smith recommended an MRI scan. Sometime in April or May 2014, the scan was done of the left knee.

On May 19, 2014, Plaintiff saw his care provider Dr. Moon [not a defendant], who said that the MRI scan showed a large meniscus tear that would require surgery. Dr. Moon submitted a request form for surgery and defendant Dr. Beregovskaya approved it. On June 5, 2014, Plaintiff had arthroscopy knee surgery performed by Dr. Smith.

Defendant Beregovskaya scheduled follow-up treatment for Plaintiff which was approved by defendant Dr. Wang. On June 20, 2014, Dr. Smith examined Plaintiff and removed stitches from his knee. Dr. Smith told Plaintiff that while inside Plaintiff's knee he observed severe osteoarthritis degenerative changes, and a meniscus so thin that there was no cushion between the femur and tibia bones. He told Plaintiff he might need additional surgery. Dr. Smith recommended physical therapy and requested to see Plaintiff again in a month. On June 24, 2014, defendant Beregovskaya submitted a physician request for Plaintiff's physical therapy, which was approved by defendant McCabe. Eighty days later, Plaintiff had not had a follow-up appointment with Dr. Smith. On September 9, 2014, Plaintiff submitted a request form to see an Orthopedic Specialist. On September 12, 2014, Plaintiff was examined by Dr. Smith and told the doctor about his pain. Smith told Plaintiff his knee is not going to get better, and he submitted a Physician's Request form for an evaluation for Total Knee Replacement (TKR) surgery in one month.

On October 10, 2014, Plaintiff saw Dr. Smith who referred Plaintiff for a second opinion for TKR surgery. On October 22, 2014, Dr. Moon examined Plaintiff and agreed that Plaintiff should see a second orthopedic specialist. Dr. Moon submitted a request form and defendant Beregovskaya approved it.

Sixty-seven days later Plaintiff had extreme pain and swelling and submitted a sick call request on December 28, 2014. On January 2, 2015, Plaintiff talked with RN D. McGrew [not a defendant], explained his symptoms and told her the current pain medication was not working. Plaintiff told RN McGrew about his referral to an orthopedic specialist 72 days ago and that his prison janitor job required him to walk over 300 yards to and from work. Plaintiff asked to be medically unassigned but RN McGrew said she is only authorized to issue medical lay-ins and issued Plaintiff a two day lay-in from work. Plaintiff also saw Physician's Assistant C. Sisodia [not a defendant] who told Plaintiff he needed to wait for Dr. Moon to return. RN McGrew said Plaintiff should submit another inmate sick call slip in the meantime. On January 9, 2015, Plaintiff submitted another sick call request to see Dr. Moon or another Orthopedic Specialist.

Plaintiff saw RN McGrew again on January 13, 2015. By now it had been 83 days since Dr. Moon submitted a request for Plaintiff to see an Orthopedic Specialist and Plaintiff was experiencing great pain walking. RN McGrew told him to submit another sick call request for renewal of the lay-in. On January 16, 2015, Plaintiff had a Telemed Medical Consultation with Orthopedic Specialist Dr. David Amory [not a defendant]. Dr. Amory reviewed Plaintiff's history and the MRI and told him TKR surgery was the only option. Plaintiff agreed to the surgery and Dr. Amory said he would get the process started. Dr. Amory also told Plaintiff to ask the institution doctor about stronger medication. On January 22, 2015, Plaintiff submitted a sick call slip to ask for more effective medication. Twenty-one days after seeing Dr. Amory, Plaintiff submitted a third sick call slip on February 5, 2015.

On February 9, 2015, Plaintiff saw RN McGrew again about his symptoms and told her that Dr. Amory had decided that he needed TKR surgery. He also told her that his medication had expired 10 days ago, although the medication was not very helpful; that he was still being called to work; and that refusal to report or work would subject him to a disciplinary write-up. RN McGrew gave Plaintiff Advil, told him to use it until his medication was renewed, and told him he was scheduled to see Dr. Moon on February 12th.

///

On February 12, 2015, Plaintiff saw Dr. Moon and told Dr. Moon that he had seen Dr.

Amory who diagnosed him with severe osteoarthritis in his left knee, and that both Dr. Smith and Dr. Amory had recommended TKR surgery. Plaintiff also told Dr. Moon about his job and asked to be medically unassigned. Dr. Moon prescribed Tylenol with Codeine, a narcotic Plaintiff opposed because it had caused him sickness, dizziness and constipation after his three previous knee surgeries. Dr. Moon said narcotics were best for pain considering the condition of Plaintiff's knee. Dr. Moon had Plaintiff walk a short distance and witnessed his knee giving out. Dr. Moon ordered a cane to be issued for Plaintiff, told Plaintiff that medical unassignments are not preferred and that he would write him a physical limitation chrono. Dr. Moon told Plaintiff he had reviewed the other two Orthopedic Doctors' recommendations for TKR surgery and agreed that left untreated, his condition would get worse. Dr. Moon submitted a physician request for Plaintiff to receive TKR surgery.

After taking Tylenol with Codeine for a week, Plaintiff submitted a sick call slip asking to stop the medicine because of side effects. On March 3, 2015, Plaintiff saw Dr. Moon and described the side effects: difficult to swallow, tastes terrible, causes gagging, regurgitation, nausea, stomach cramps, dizziness, constipation, and painful bowel movements. Plaintiff asked about the status of the TKR surgery and learned that both of the requests by Dr. Moon had been denied by defendant Beregovskaya. Plaintiff complained to Dr. Moon about the denials and Dr. Moon said he would submit a third request and take Plaintiff's medical records to defendant McCabe, the Chief Medical Officer, himself. Dr. Moon took Plaintiff off the Tylenol with Codeine and prescribed morphine three times a day. On March 30, 2015, Dr. Moon submitted the third physician request for Plaintiff to have TKR surgery.

On April 26, 2015, Plaintiff was still in great pain and submitted a sick call slip explaining that he had a burning/pulling pain inside his left knee and that it felt loose and hurt even after taking medication. On April 28, 2015, Plaintiff saw RN McGrew, described his symptoms and asked for his prescription to be refilled. Plaintiff asked about the status of his TKR surgery and was told that Dr. Moon had submitted the third request and spoken to Dr. McCabe. On June 1, 2015, Plaintiff spoke with Physician's Assistant C. Sisodia [not a defendant] and asked about the status of his surgery. Plaintiff was told that the third request had been denied by defendant

McCabe without explanation or alternate treatment or treatment plan, leaving Plaintiff in pain and distress not understanding why he was continually denied surgery.

On June 16, 2015, Plaintiff submitted a sick call slip because his knee was giving out and causing pain, pressure from swelling was causing pain, the current medication (morphine) only dulled the pain, and Plaintiff had trouble sleeping. On June 19, 2015, Plaintiff saw RN McGrew, explained his symptoms and said that his pain level was constantly 8, 9, or 10 and the medication wore off leaving him with 4-6 hours of pain before taking the next dose. McGrew said she would put Plaintiff on the doctor's list.

On July 1, 2015, another inmate, Ronald Handwerk CDCR #AL-7901, had TKR surgery performed by Orthopedic Specialist and Surgeon Dr. Amory at Tri City Hospital in San Diego. On July 9, 2015, Plaintiff submitted a sick call slip complaining that his left knee constantly goes out and there is a painful popping, tearing sensation and swelling. On July 16, 2015, Plaintiff saw RN McGrew, and while McGrew was taking Plaintiff's vital signs she apologized to Plaintiff that his TKR surgery was denied. Plaintiff expressed his frustration stating that he doesn't understand why his surgery was denied when inmate Handwerk had TKR surgery the first week of July. McGrew suggested that Plaintiff should inform Dr. Moon about the other inmate having surgery.

On July 17, 2015, Plaintiff was summoned by RN McGrew to see Dr. Wang. McGrew said she had already explained Plaintiff's situation to Dr. Wang. Dr. Wang said he was interviewing Plaintiff for his medical appeal log# 15058666 and asked Plaintiff why he believes he needs TKR surgery. Plaintiff told Dr. Wang that it was based on the medical opinions by Orthopedic Specialists Dr. Smith, Dr. Amory, and Dr. Moon. Plaintiff told Dr. Wang about the history of his knee and attempted to show Dr. Wang the medical records from 1987, his past surgeries, and the other doctors' recommendations. Plaintiff also attempted to show Dr. Wang his knee, but Dr. Wang declined and asked Plaintiff if he was on medication. Plaintiff explained the history of his medications and told Dr. Wang about his frustrations. Dr. Wang prescribed Tripletail for depression and as a sleep aid, then postponed the interview until after he could talk to Chief Medical Officer McCabe.

On July 22, 2015, Plaintiff spoke with a correctional counselor [not a defendant] by phone, and the counselor asked Plaintiff if he could be transferred by bus or van. Plaintiff said he has medical documentation to be transported by vehicle with a wheelchair lift. Plaintiff asked why, and the counselor told him he was going to be transferred. Plaintiff objected because now the whole process of trying to get surgery would start all over. On July 27, 2015, Plaintiff was transferred to R.J. Donovan Correctional Facility (RJD) in San Diego. On August 10, 2015, Correctional Counselor R. Flores [not a defendant] interviewed Plaintiff and asked why he was sent to RJD. Plaintiff said he didn't know and briefly explained his medical condition and requests for surgery. Flores looked on the computer at Plaintiff's Central File and said there was nothing in his file about a medical transfer. Flores told Plaintiff to submit a sick call slip.

On August 27, 2015, Plaintiff was examined by Dr. Casian [not a defendant], his new primary care provider. Dr. Casian took Plaintiff's medical history and asked Plaintiff why he did not receive TKR surgery. Plaintiff said he did not know why -- he was not given an explanation for the denial of TKR surgery. Dr. Casian examined Plaintiff's left knee and stated she (Casian) was going to submit a Physician Request for Plaintiff to see an Orthopedic Specialist, get x-rays and have an MRI. Plaintiff said he had already had those tests. Dr. Casian said she would talk to the Chief Medical Officer and it may not be necessary to start over.

On March 22, 2016, Plaintiff had an MRI scan of his left knee which revealed posttraumatic and degenerative changes. The anterior cruciate ligament was torn, the lateral meniscus was nearly absent with thinning of the medial meniscus causing bone to touch bone, and a small Baker ganglion cyst had formed as a result of continued use of morphine causing constipation.

On May 9, 2016, Plaintiff's colon was examined revealing two polyps which were surgically removed. On June 7, 2016, Plaintiff had a Telemed consultation with Orthopedic Specialist Dr. Cham [not a defendant] who discussed Plaintiff's MRI and told Plaintiff his only medical option was total knee replacement. On November 9, 2016, Plaintiff had TKR surgery performed on his left knee by Dr. Cham, with no complications.

After removal of staples and physical therapy, Plaintiff stopped taking morphine on his

own in approximately two weeks and was able to sleep and maneuver without pain.

Based on these facts, Plaintiff alleges an Eighth Amendment violation.

## IV.   PLAINTIFF'S MEDICAL CLAIM – LEGAL STANDARD

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under

the Eighth Amendment." <u>Id.</u> at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

## V.   DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS[5]

Defendants Dr. Conall McCabe and Dr. Olga Beregovskaya submit the following statement of undisputed facts and evidence in support of their motion for summary judgment:

| <u>UNDISPUTED FACTS</u> | <u>SUPPORTING EVIDENCE</u> |
|---|---|
| 1. Plaintiff Larnell C. Collins is an inmate currently incarcerated at the California State Prison – Substance Abuse and Treatment Facility ("CSP-SATF") located in Corcoran, California, since December 24, 2018. Prior to that, Plaintiff was incarcerated at California State Prison – Los Angeles County from October 23, 2018 through December 24, | 1. Barba Decl. ¶ 5-8. |

---

[5] Plaintiff failed to properly address Defendants' statement of undisputed facts, as required by Local Rule 260(b).  Accordingly, the court may consider Defendants' assertions of fact as undisputed for purposes of this motion.  <u>Id</u>; Fed. R. Civ. P. 56(e)(2).  However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," <u>Estelle</u>, 429 U.S. at 106. Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings shall be construed so as to do justice," <u>see</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.  On March 17, 2022, Plaintiff filed Plaintiff's Separate Statement of Undisputed Facts, which is being considered by the Court in its analysis of the motion for summary judgment.  (ECF No. 40.)

| | |
|---|---|
| 2018. Prior to that, Plaintiff was incarcerated at California State Prison – Richard J. Donovan Facility ("CSP-RJD") from July 27, 2015 through October 23, 2018. Prior to that, Plaintiff was incarcerated at California State Prison – Corcoran ("CSP-COR") from March 5, 2014 through July 27, 2015. | |
| 2. Plaintiff's medical records show that on March 18, 2014, Defendant Dr. Beregovskaya ordered an x-ray of Plaintiff's right hand and left knee. | 2. Decl. of Beregovskaya ¶ 6; Decl. of McCabe ¶ 5. |
| 3. On March 21, 2014, an x-ray of Plaintiff's right hand and left knee were performed. | 3. Decl. of Beregovskaya ¶ 7; Decl. of McCabe ¶ 6. |
| 4. The results of the March 21, 2014 x-ray of Plaintiff's left knee showed an impression of: chondrocalcinosis (a condition in which calcium crystals deposit in the joints), which could be due to CCPD crystal deposition disease. The results further showed mild tricompartmental osteoporosis and intraarticular loose body. | 4. Decl. of Beregovskaya ¶ 8. |
| 5. On March 25, 2014, Plaintiff had a consultation with orthopedic specialist Dr. David Smith. | 5. Decl. of Beregovskaya ¶ 9; Decl. of McCabe ¶ 7. |
| 6. Dr. Smith's March 25, 2015 Consultation Report recommended Plaintiff undergo a MRI. | 6. Decl. of Beregovskaya ¶ 10; Decl. of McCabe ¶ 8. |

| | |
|---|---|
| 7. Defendant Dr. McCabe reviewed and signed Dr. Smith's March 25, 2014 consultation report. | 7. Decl. of Beregovskaya ¶ 11. |
| 8. On April 8, 2014, Dr. J Moon, submitted an RFS for an MRI of Plaintiff's left knee, which was ultimately approved by Defendant Dr. McCabe on April 11, 2014. | 8. Decl. of Beregovskaya ¶¶ 13,15; Decl. of McCabe ¶¶ 10,12. |
| 9. Plaintiff thereafter underwent an MRI of his left knee on May 5, 2014. This showed a large meniscus tear. | 9. Decl. of Beregovskaya ¶ 16; Decl. of McCabe ¶ 13. |
| 10. The MRI results showed: 1) a large meniscus tear with displaced meniscus tissue; 2) no cruciate or collateral ligament tears; 3) evidence of prior lateral tibial plateau fracture with adjacent arthritis; and 4) popliteal ganglion cyst. | 10. Decl. of Beregovskaya ¶ 17. |
| 11. On May 19, 2014, Dr. J. Moon submitted a RFS for Plaintiff to have arthroscopic surgery. | 11. Decl. of Beregovskaya ¶ 18; Decl. of McCabe ¶ 14. |
| 12. Defendant Dr. Beregovskaya approved the RFS for surgery to repair the torn meniscus in Plaintiff's left knee on May 20, 2014. | 12. Decl. of Beregovskaya ¶ 19; Decl. of McCabe ¶ 15. |
| 13. On June 5, 2014, Plaintiff underwent orthopedic surgery to repair the torn meniscus in his left knee at Delano Regional Medical Center, which was performed by Dr. Smith. | 13. Decl. of Beregovskaya ¶¶ 20,21; Decl. of McCabe ¶¶ 16,17. |

| | |
|---|---|
| 14. On June 5, 2014, Dr. R. Gill issued a prescription order, giving Plaintiff a 14-day healthcare lay in. | 14. Decl. of Beregovskaya ¶¶ 20,21; Decl. of McCabe ¶¶ 16,17. |
| 15. During Plaintiff's June 20, 2014, post-arthroscopic appointment with Dr. Smith, Dr. Smith found that Plaintiff's incisions were healing satisfactorily and removed Plaintiff's stitches. Dr. Smith recommended that Plaintiff begin physical therapy to last four weeks. | 15. Decl. of Beregovskaya ¶ 22; Decl. of McCabe ¶ 18. |
| 16. On June 27, the medical records show that Plaintiff was prescribed Tylenol with Codeine by Dr. R. Gill. | 16. Decl. of Beregovskaya ¶ 23. |
| 17. On July 8, 2014, Plaintiff submitted a sick call slip requesting a refill for his loratadine prescription. | 17. Decl. of Beregovskaya ¶ 24; Decl. of McCabe ¶ 19. |
| 18. On July 30, 2014, Plaintiff submitted a sick call slip requesting refills for his acetaminophen and sulindac prescriptions | 18. Decl. of Beregovskaya ¶ 25; Decl. of McCabe ¶ 20. |
| 19. On September 1, 2014, Plaintiff submitted a sick call slip requesting refills for his acetaminophen and sulindac prescriptions. Plaintiff submitted a second sick call slip on September 1, 2014, requesting a refill of his sulindac and acetaminophen prescriptions, a replacement for a tattered elastic knee brace, and replacement pair of reading glasses. | 19. Decl. of Beregovskaya ¶ 26; Decl. of McCabe ¶ 21. |

| | |
|---|---|
| 20. On September 9, 2014, Plaintiff submitted sick call slip requesting to reschedule his follow-up orthopedic surgeon/specialist Dr. Smith, because the original follow-up appointment was cancelled due to Dr. Smith's illness. Plaintiff submitted a second sick call slip on September 9, 2014, requesting a replacement elastic knee brace. | 20. Decl. of Beregovskaya ¶ 27; Decl. of McCabe ¶ 22. |
| 21. On September 12, 2014 Plaintiff saw and consulted with Dr. Smith and presented with persisting knee pain. Dr. Smith found that Plaintiff "will probably eventually need a total knee replacement." Defendant Dr. Beregovskaya reviewed and signed Dr. Smith's September 12, 2014 report on September 22, 2014. | 21. Decl. of Beregovskaya ¶ 28; Decl. of McCabe ¶ 23. |
| 22. On September 16, 2014, Dr. J. Moon provided Plaintiff with a prescription for Tylenol for breakthrough pain. | 22. Decl. of Beregovskaya ¶ 29; Decl. of McCabe ¶ 24. |
| 23. On September 29, 2014 Dr. J. Moon submitted a RFS for Plaintiff to see orthopedic specialist Dr. Smith for an appointment following the left knee arthroscopy performed on June 5, 2014, and for evaluation for total knee replacement surgery. | 23. Decl. of Beregovskaya ¶ 30; Decl. of McCabe ¶ 25. |
| 24. On October 10, 2014, Plaintiff had a consultation with Dr. Smith. Plaintiff, who found that Plaintiff had significant | 24. Decl. of Beregovskaya ¶ 31; Decl. of McCabe ¶ 26. |

| | |
|---|---|
| degenerative changes in his left knee and reiterated his earlier opinion that Plaintiff "will probably be a candidate for a total knee replacement." Dr. Smith requested that Plaintiff have a consultation for a total knee replacement. Defendant Dr. Beregovskaya reviewed and signed Dr. Smith's October 10, 2014 report on October 15, 2014. | |
| 25. On October 22, 2014, Dr. J. Moon submitted a RFS for Plaintiff to have an orthopedic consultation for evaluation for a total knee replacement. | 25. Decl. of Beregovskaya ¶ 32; Decl. of McCabe ¶ 27. |
| 26. On October 24, 2014, Defendant Dr. Beregovskaya reviewed and approved the RFS for an orthopedic consultation submitted by Dr. J. Moon on October 22, 2014. | 26. Decl. of Beregovskaya ¶ 33; Decl. of McCabe ¶ 28. |
| 27. A December 28, 2014 Health Care Services Request Form submitted by Plaintiff, notes "Please schedule me to see doctor soon! Thank you!" | 27. Decl. of Beregovskaya ¶ 34. |
| 28. On January 3, 2015, a Health Care Services Request Form submitted by Plaintiff, notes instead, "Please refill sulindac and acetaminophen that I take for arthritis in right and osteoarthritis in left knee. Thank you!" | 28. Decl. of Beregovskaya ¶ 35. |
| 29. On January 9, 2015, a Health Care Services Request Form submitted by Plaintiff, notes instead, "On 01-08-15, I was supposed | 29. Decl. of Beregovskaya ¶ 36. |

| | |
|---|---|
| to be examined by Dr. J. Moon (Primary Care Provider) for follow-up treatment on injured [sic] knee. However, I was seen by Physician Assistant who is unfamiliar with my medical condition and as a result, medical issues were not completely addressed. I have been diagnosed as having severe osteoarthritis and other degenerative issue in the knee. I am experiencing great pain, may I please be seen by Dr. J. moon and/or Orthopedic Specialist D. Smith. Thank you!" | |
| 30. On January 14, 2015, a Health Care Services Request Form submitted by Plaintiff, notes instead, "McGrew, RN. Per your instruction given to me Tuesday 1-13-15, please review medial lay-in," and references his job with a clean-up crew and the effect on his arthritis. | 30. Decl. of Beregovskaya ¶ 37. |
| 31. On January 16, 2015, Plaintiff had a telemedicine appointment with Dr. David W. Armory for an evaluation for a total knee replacement surgery. Dr. Armory's resulting report noted that Plaintiff had osteoarthritis of the left knee, and found that Plaintiff "is probably a candidate for a total knee arthroplasty." Dr. Armory's report notes that the risks associated with the procedure were shared with Plaintiff, including neurovascular | 31. Decl. of Beregovskaya ¶ 38; Decl. of McCabe ¶ 29. |

| | |
|---|---|
| damage, failure of instrumentation, failure of fixation, and peri and post procedure deep venous thrombosis, pneumonia and infection. Defendant Dr. Beregovskaya reviewed and signed Dr. Armory's January 16, 2015 report on January 26, 2015. | |
| 32. On February 12, 2015, Dr. Moon submitted a RFS for a total knee replacement surgery for Plaintiff. | 32. Decl. of Beregovskaya ¶ 39; Decl. of McCabe ¶ 30. |
| 33. On February 12, 2015, Plaintiff was provided a cane for help with ambulation and a 30-day prescription for Tylenol with codeine. | 33. Decl. of Beregovskaya ¶ 40; Decl. of McCabe ¶ 31. |
| 34. On February 17, 2015, Defendant Dr. Beregovskaya reviewed and denied Dr. Moon's February 12, 2015, RFS, noting that the medical necessity listed by Dr. J. Moon, did meet the InterQual (IQ) criteria, and that insufficient information was provided. Dr. Beregovskaya emailed Dr. Moon requesting that he provide a revised RFS with additional information. | 34. Decl. of Beregovskaya ¶ 41; Decl. of McCabe ¶ 32. |
| 35. On February 23, 2015, Dr. Moon submitted a RFS for a total knee replacement surgery for Plaintiff. | 35. Decl. of Beregovskaya ¶ 42; Decl. of McCabe ¶ 33. |
| 36. On February 25, 2015, Dr. Beregovskaya reviewed and denied Dr. J. Moon's February 23, 2015, RFS, noting that Dr. Moon did not | 36. Decl. of Beregovskaya ¶ 43; Decl. of McCabe ¶ 34. |

| | |
|---|---|
| revise the submitted information and that the February 23, 2015, RFS appeared to be a copy of the February 12, 2015, RFS. | |
| 37. On March 3, 2015, Plaintiff was given a 60- day prescription for Morphine IR. | 37. Decl. of Beregovskaya ¶ 44; Decl. of McCabe ¶ 35. |
| 38. On March 6, 2015, Plaintiff underwent an x-ray of his left knee. The impression/results indicated a stable examination as reported by Christopher Schultz, M.D. | 38. Decl. of Beregovskaya ¶ 45. |
| 39. On March 30, 2015, a third RFS for total knee replacement surgery for Plaintiff was submitted by Dr. J. Moon. | 39. Decl. of Beregovskaya ¶ 46; Decl. of McCabe ¶ 36. |
| 40. On April 24, 2015, the March 30, 2015, RFS was reviewed by HQ UM and was not approved, noting that it did not meet InterQual criteria. | 40. Decl. of Beregovskaya ¶ 47; Decl. of McCabe ¶ 37. |
| 41. Plaintiff's medical record shows that: on April 28, 2015, Plaintiff was given a 30-day renewal prescription for Morphine IR; on May 19, 2015, and that Plaintiff was given a 30-day renewal prescription for Morphine IR. | 41. Decl. of Beregovskaya ¶¶ 48-49; Decl. of McCabe ¶¶ 38-39. |
| 42. Plaintiff's medical records show that on June 12, 2015, Plaintiff was given a 30-day renewal prescription for Morphine IR, and on June 16, 2015, Plaintiff was given a 90-day prescription for Morphine. | 42. Decl. of Beregovskaya ¶ 50-51; Decl. of McCabe ¶¶ 40-41. |
| 43. On or about June 22, 2015, Plaintiff filed a First Level Appeal, COR HC 150586666, to | 43. Decl. of Beregovskaya ¶ 52; Decl. of McCabe ¶ 42. |

18

| | |
|---|---|
| appeal among other issues, the April 24, 2015, decision denying the March 30, 2015, RFS for total knee replacement surgery submitted by Dr. Moon. | |
| 44. On or about July 16, 2015, Plaintiff was interviewed by Dr. Wang regarding his COR HC 15058666 appeal. Dr. Wang discussed the potential risks associated with a total knee replacement surgery procedure, as listed in the January 16, 2015, report prepared by Dr. Armory. Dr. Wang also explained to Plaintiff that that goal of the total knee replacement is to relieve pain. Dr. Wang recommended optimization of pain management with prescriptions of Morphine ER and Trileptal, and Plaintiff consented to the recommended treatment and was prescribed Morphine ER and Oxcarbazepine. | 44. Decl. of Beregovskaya ¶ 53; Decl. of McCabe ¶ 43. |
| 45. On July 24, 2015, Plaintiff was given a prescription for morphine sulfate ER for the period July 16, 2015 through October 14, 2015, for knee pain by Dr. J. Wang. | 45. Decl. of Beregovskaya ¶ 54. |
| 46. Plaintiff was transferred out of CSP-COR to California State Prison-Richard J. Donovan, located in San Diego, California, on July 27, 2015. | 46. Decl. of Beregovskaya ¶ 55; Decl. of McCabe ¶ 44. |
| 47. Plaintiff eventually underwent total knee replacement surgery over a year after his | 47. Decl. of Beregovskaya ¶ 56; Decl. of McCabe ¶ 45. |

| | |
|---|---|
| transfer from CSP-COR, on November 9, 2016, performed by Dr. Roman Cham, at Alvarado Hospital Medical Center, located in San Diego, California. | |
| 48. The medically acceptable practice, as well as the practice that accords with CDCR guidelines, to treat an injury like plaintiff's left knee pain is to assess the injury, proceed through conservative treatment, and then, if necessary, proceed to surgical assessment and intervention. | 48. Decl. of Beregovskaya ¶ 57; Decl. of McCabe ¶ 46. |
| 49. Plaintiff Larnell C. Collins received all reasonable, necessary and medically acceptable care and treatment from Defendants while housed at the California State Prison – Corcoran Facility, located in Corcoran, California. The medical care was consistent with community standards, and consistent with the degree of knowledge and skill ordinarily possessed and exercised by member of the medical community under similar circumstances. As evidenced in Defendants' Statement of Facts, at no time did Defendants ever knowingly or intentionally deny inmate Collins medically acceptable care. At no time did Defendants ever knowingly or intentionally seek to deny inmate Collins access to medical treatment, or | 49. Decl. of Beregovskaya ¶ 58; Decl. of McCabe ¶ 47. |

| | |
|---|---|
| disregard any risk of harm, injury, or undue pain and suffering to inmate Collins. | |
| 50. Plaintiff received appropriate and timely medical care while housed at CSP-Corcoran. Despite Plaintiff's disagreement with the pace of his treatment and its course, his care team acted consistently and attentively in following him up and getting appropriate tests and consultations in order to accomplish a successful medical outcome. Inmate Larnell C. Collins received from practitioners caring for him in CSP-COR and private offices, reasonable, necessary, and medically acceptable care and treatment. This medical care was consistent with community standards and consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of the medical profession. | 50. Decl. of Beregovskaya ¶ 59; Decl. of McCabe ¶ 48. |

## VI.   DEFENDANTS' POSITION

Defendants argue that Plaintiff's Eighth Amendment deliberate indifference claim fails because Defendants' course of treatment was medically reasonable and acceptable, and Defendants were not deliberately indifferent to Plaintiff's medical needs.

Defendants submit as evidence their statement of undisputed facts and Declarations of Conall McCabe, M.D. (Defendant), Olga Beregovskaya, M.D. (Defendant), and Jason Barba (litigation coordinator), and the pleadings, records, and files in this action.   Defendants argue as follows:

**<u>Serious Medical Need</u>**

For purposes of this motion, Defendants assume that Plaintiff had a serious medical need. (ECF No. 29-1 at 16:25-26.)[6]  Therefore, the parties do not dispute that Plaintiff had a serious medical need.

**Deliberate Indifference**

Based on the evidence below, Defendants argue that no evidence exists to show that they acted with deliberate indifference to Plaintiff's condition.  Defendants argue that they did not purposely act or fail to respond to Plaintiff's medical needs.  According to Defendants, records show that they took reasonable care and consideration in their review of the Request For Services (RFS) submitted by Plaintiff's Primary Care Provider Dr. J. Moon for a total knee replacement of Plaintiff's left knee.  Defendants denied the request for total knee replacement based on Plaintiff's condition presented in the RFSs submitted by Dr. Moon on February 12, 2015, February 23, 2015, and March 30, 2015, noting that Plaintiff's condition did not meet the InterQual criteria and requested more definite information about the severity of Plaintiff's left knee pain and its effect on Plaintiff's Activities of Daily Living ("ADL's").  After Defendant Dr. Beregovskaya requested more information from Dr. Moon after the submission of his February 12, 2015 RFS, Dr. Moon submitted his second RFS for total knee replacement on February 23, 2015, without providing the additional information requested by Dr. Beregovskaya when she (Beregovskaya) denied the initial RFS.  Defendants assert that they never knowingly or intentionally sought to deny inmate Collins access to medical treatment or disregard any risk of harm, injury, or undue pain and suffering to inmate Collins. (Decl. of Beregovskaya ¶ 58; Decl. of McCabe ¶ 47.)

Defendant Dr. Beregovskaya declared:

I provided Plaintiff Larnell Collins all reasonable, necessary and medically acceptable care and treatment. The medical care was consistent with community standards, and consistent with the degree of knowledge and skill ordinarily possessed and exercised by member of a similar profession under

---

[6] All page numbers cited herein by the Court are those assigned by the Court's CM/ECF system and not based on the parties' pagination of their briefing materials.

similar circumstances. At no time did I ever knowingly or intentionally seek to deny inmate Plaintiff's access to medical treatment, or disregard any risk of harm, injury, or undue pain and suffering to inmate Collins. At no time did I intend to cause inmate Collins pain. Inmate Collins was prescribed appropriate medications and referred to appropriate treatment to manage pain associated with his left knee pain. No party to the instant litigation was deliberately indifferent to inmate Larnell Collins' medical needs.

(Decl. of Beregovskaya ¶ 58.)

Defendant McCabe declared:

COR medical staff provided Plaintiff Larnell Collins reasonable, necessary and medically acceptable care and treatment. The medical care was consistent with community standards, and consistent with the degree of knowledge and skill ordinarily possessed and exercised by member of a similar profession under similar circumstances. At no time did I ever knowingly or intentionally seek to deny inmate Plaintiffs access to medical treatment, or disregard any risk of harm, injury, or undue pain and suffering to inmate Collins. At no time did I intend to cause inmate Collins pain. Inmate Collins was prescribed appropriate medications and referred to appropriate treatment to manage pain associated with his left knee pain. No party to the instant litigation was deliberately indifferent to inmate Larnell Collins' medical needs.

(Decl. of McCabe ¶ 47.)

Defendants also argue that there was no evidence presented to show Plaintiff suffered an injury or increased pain because of any act or omission by Defendants. In fact, Defendants assert that the evidence shows that the alleged pain Plaintiff attributes to his left knee was maintained through pain medication, durable assistive devices, and orders for medical lay-ins to provide relief to Plaintiff. It wasn't until a year after Plaintiff was transferred another facility that his subsequent medical providers felt that Plaintiff met the criteria to undergo a total knee replacement surgery. Moreover, it was Defendant Dr. Beregovskaya who approved the

arthroscopic surgery performed on Plaintiff on June 5, 2014.  Plaintiff's disagreement with the pace of his treatment or its course does not evidence deliberate indifference on part of the Defendants.

In addition, Defendants argue that Plaintiff received reasonable, necessary and medically acceptable care and treatment from Defendants while housed at the California State Prison – Corcoran Facility, located in Corcoran, California. This medical care was consistent with community standards and consistent with the high degree of knowledge and skill ordinarily possessed and exercised by members of the medical profession.

Defendant Dr. Beregovskaya and Dr. McCabe agreed and both declared as follows:

"Mr. Collins received appropriate medical care while housed at CSP-Corcoran. His care team persisted in their attentiveness in following him up and getting appropriate tests and consultations and accomplishing a successful medical outcome. Larnell Collins received from practitioners caring for him in CDCR and private offices reasonable, necessary, and medically acceptable care and treatment. This medical care was consistent with community standards and consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of my medical profession.

(Decl. of Beregovskaya ¶ 59; Decl. of McCabe ¶ 48.)

Defendants also both declared as follows:

The medically acceptable practice, as well as the practice that accords with CDCR guidelines, to treat an injury like plaintiff's left knee pain is to assess the injury, proceed through conservative treatment until it is exhausted, and then proceed to surgical assessment and intervention.

(Decl. of Beregovskaya ¶ 57; Decl. of McCabe ¶ 46.))

Finally, Defendants assert that they considered medical opinions provided on the three occasions. They acted as advisory physicians reviewing a Physician's Order Request for Services for a total knee replacement of Plaintiff's left knee. Defendants contend that their medical decisions were reasonable and justifiable under the conditions then known to Defendants, and

they maintain that Plaintiff cannot show that the course of treatment chosen by the doctors, including Defendants, was medically unacceptable under the circumstances, and that this course was chosen in conscious disregard of an excessive risk to Plaintiff's health.

Based on the above, Defendants argue that there is no evidence that Defendants purposefully acted or failed to act resulting in harm to the Plaintiff.

## VII.   DEFENDANTS HAVE MET THEIR BURDEN

Based on Defendants' arguments and evidence, the court finds that Defendants have met their burden described above.  Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

## VIII.   PLAINTIFF'S EVIDENCE

On March 17, 2022, Plaintiff filed his opposition to Defendants' motion for summary judgment.  (ECF Nos. 38, 39, 40.)  Plaintiff argues that Dr. Beregovskaya and Dr. McCabe, medical doctors employed by CDCR at Corcoran State Prison during the time at issue, were deliberately indifferent to his serious medical needs when they denied him Total Knee Replacement (TKR) surgery.  (Complaint (Cmp), ECF No. 1 at 7 ¶¶ 6, 8; Plaintiff Decl., ECF No. 39 at 2. ¶ 6.)  Plaintiff's evidence consists of his verified Complaint (ECF No. 1), his verified Statement of Undisputed Facts (ECF No. 38), and his declaration, with exhibits, signed under penalty of perjury (ECF No. 39).  A summary of Plaintiff's evidence follows:

On October 21, 1987, when Plaintiff was incarcerated at CSP-San Quentin, he severely injured his left knee and had reconstructive surgery performed on it on October 22, 1987.  (Pltf Decl at 2 ¶ 10.)  In 1993 or 1994, when he was incarcerated at CSP-Sacramento, he had Arthroscopic Surgery performed on his left knee at Folsom Mercy Hospital.  (Pltf. Decl at 2 ¶ 11 & Exh. 1.)

Plaintiff was housed at CSP-Corcoran from March 5, 2014 through July 27, 2015.  (Pltf. Decl. at 2 ¶ 6.)

On March 18, 2014, Dr. Wang submitted a Physician RFS for Plaintiff to be examined by an orthopedic specialist for chronic knee problems, and Dr. Beregovskaya approved the request.  (Cmp at 7 ¶ 9; Pltf Decl. at 3 ¶ 14.)  On March 25, 2014, Plaintiff met with orthopedic

specialist Dr. Smith, and Plaintiff told Dr. Smith that his knee constantly gives out, he has a painful burning/tearing sensation in the middle area of his knee, painful pressure from swelling makes it difficult to walk, there is a painful popping inside, and it hurts to bend or extend his knee or walk.  (Cmp at 7-8 ¶¶ 10, 11; Pltf. Decl at 3 ¶ 15, & Exh. 4.)  Dr. Smith recommended an MRI scan and submitted a Physician's Request on April 8, 2014, which was approved by Dr. Beregovskaya.  (Cmp at 8 ¶¶ 12, 13 .)  On April 8, 2014, Dr. Moon also submitted a Physician RFS for Plaintiff to receive an MRI scan on his knee, and Dr. McCabe approved the request. (Pltf Decl at 3 ¶ 16 & Exh. 5.)

Plaintiff had the MRI scan and on May 19, 2014, Plaintiff met with Dr. Moon, who told Plaintiff that the MRI scan showed a large meniscus tear in his knee that required surgery to repair.  (Cmp at 8 ¶¶ 14, 15; Pltf. Decl at 3 ¶ 18 & Exh. 7)  Dr. Moon submitted a Physician's Request for Plaintiff to receive surgery, and Dr. Beregovskaya approved it.  (Cmp at 8 ¶ 16.)  On June 15, 2014, Plaintiff had an arthroscopy surgery performed on his knee by Dr. Smith.  (Cmp at 8 ¶ 17.)  Dr. Smith told Plaintiff he would need more surgery because while Dr Smith was removing stitches from Plaintiff's left knee, he observed severe osteoarthritis degenerative changes.  (Cmp at 8 ¶ 19; Pltf. Decl at 3 ¶ 18 & Exh. 7.)  Dr. Beregovskaya submitted a Physician's Request form for Plaintiff to receive physical therapy, and it was approved by Dr. McCabe.  (Id.)

On September 12, 2014, Plaintiff saw Dr. Smith and explained that he was experiencing significant pain in his knee.  (Cmp at 9 ¶ 24; Pltf. Decl at 4 ¶ 23 & Exh. 11.)  On September 29, 2014, Dr. Moon requested that Plaintiff see an Orthopedic Specialist in one month for Total Knee Replacement (TKR) surgery.  (Cmp at 9 ¶ 26.; Pltf. Decl at 4 ¶ 24.)  On October 22, 2014, Dr. Smith referred Plaintiff for a second opinion and Dr. Beregovskaya approved it.  (Cmp at 9 ¶ 28; Pltf. Decl at 4 ¶ 26 & Exh. 14.)  Sixty-seven days later, Plaintiff had not seen a doctor for his second opinion.  (Cmp at 9 ¶ 29; Pltf. Decl at 5 ¶ 27 & Exh. 5.)

Plaintiff was assigned a first watch job requiring him to walk more than 300 yards to and from work between 11pm and 3am, but  his injured knee could not take the stress.  (Cmp at 10 ¶ 32; Pltf. Decl at 5 ¶ 30.)  On January 2, 2015, Plaintiff met with RN McGrew and she issued him

a 2-day lay-in from work.  (Cmp at 10 ¶ 34; Pltf. Decl at 5 ¶ 30 & Exh. 16.)  On  January 8, 2015, P.A. Dr. Sisodia issued Plaintiff a one-week medical lay-in.  (Cmp at 11 ¶ 38; Pltf. Decl at 5 ¶ 34 & Exh. 17.)

On January 16, 2015, Plaintiff saw Dr. Amory and complained about his knee, explaining that it constantly gives out without warning, certain motions cause a shocking pain from the middle of his knee to his hip, it is swollen, there is pain when walking or bending his knee, and there is an extremely painful burning/tearing sensation in the middle of his knee joint.  (Cmp at 11 ¶¶ 45, 46; Pltf. Decl at 6 ¶ 41.)  Dr. Amory said Plaintiff needs TKR surgery and TKR surgery is his only option.  (Cmp at 12 ¶¶ 47, 48; Pltf. Decl at 6 ¶¶ 42, 43.)  Plaintiff understood the risk involved and gave Dr. Amory formal consent.  (Cmp at 12 ¶ 49; Pltf. Decl at 6 ¶ 44.) Dr. Amory said he would process the necessary paperwork.  (Id.)  Dr. Beregovskaya reviewed and signed Dr. Amory's medical consultation report on January 26, 2015.  (Pltf. Decl at 6 ¶ 44 & Exh. 21.)

On February 9, 2015, Plaintiff told RN McGrew that his medication had expired 10 days ago and though it does not provide much pain relief, it is all he gets.  (Cmp at 12 ¶ 52; Pltf. Decl at 6 ¶¶ 47, 48 & Exh. 22.)  McGrew issued Plaintiff a bottle of Advil.  (Cmp at 12 ¶ 53; Pltf. Decl at 6 ¶ 49.)

On February 12, 2015, Plaintiff was seen by Dr. Moon and told Moon about his constant tremendous pain.  (Cmp at 13 ¶ 55; Pltf. Decl at 6 ¶ 50.)  Dr. Moon prescribed Tylenol with codeine, ordered Plaintiff to be issued a cane, and said he would write Plaintiff a physical limitation chrono.  (Cmp at 13 ¶¶ 58-60; Pltf. Decl at 8 ¶ 54 & Exhs. 24A, 24B, 24C.)  On March 3, 2015, Plaintiff was seen by Dr. Moon, and Plaintiff told the doctor that crushed Tylenol is difficult to swallow, tastes terrible, and causes gagging, regurgitation, nausea, stomach cramps, dizziness, constipation, and painful bowel movements.  (Cmp at 13-14 ¶ 63; Pltf. Decl at 8 ¶ 57.)  Plaintiff learned that both his February 12, 2015 and February 23, 2015 Physician RFSs submitted by Dr. Moon were denied by Dr. Beregovskaya.)  (Cmp at 14 ¶ 64; Pltf. Decl at 8 ¶ 58 & Exhs. 25, 27.)

Headquarters Utilization Management denied Plaintiff's request for surgery, requesting additional information.  (Statement of Undisputed Facts, ECF No. 38 at 20:3-4.)  Plaintiff argues

that if Defendant McCabe in fact agreed that Plaintiff should have TKR Surgery and denied Plaintiff surgery consideration because insufficient information was provided, then McCabe should have shown Dr. Moon the correct way to complete the RFS forms, or correctly completed the RFS himself.

Dr. Moon told Plaintiff that Dr. McCabe had requested to meet him (Moon) to discuss Plaintiff's need for TKR surgery.  (Pltf. Decl at 8 ¶ 59 & Exhs. 28A, 28B.)  Dr. Moon took Plaintiff off Tylenol with codeine and prescribed morphine three times a day.  (Cmp at 14 ¶ 67; Pltf. Decl at 8 ¶ 57.)  On March 30, 2015, Dr. Moon submitted the third Physician RFS for Plaintiff to receive TKR surgery.  (Cmp at 14 ¶ 68; Pltf. Decl at 8 ¶ 60.).)  Plaintiff was informed that his third request for surgery was denied by Dr. McCabe on April 20, 2015, again without explanation.  (Cmp at 15 ¶ 73; Pltf. Decl at 8 ¶ 60 & Exh. 30.)

On June 19, 2015, Plaintiff was seen by RN McGrew, and Plaintiff reported that his pain level was a constant 8, 9, or 10 and most of the pain was late night or early morning when the medication had worn off, leaving Plaintiff to go four to six hours in pain before taking another pill.  (Cmp at 15 ¶ 75.)  Plaintiff was frustrated and confused, stating that he doesn't understand why he keeps getting denied surgery when another inmate had TKR surgery in the first week of July.  (Cmp at 15 ¶ 79.)

On July 17, 2015, Plaintiff told Dr. Yang that crushed morphine tastes horrible, Plaintiff has difficulty swallowing it, he regurgitates and feels nauseous, and the medicine causes dizziness, stomach cramps, constipation, and painful bowel movements.  (Cmp at 17 ¶ 89.)  Plaintiff also told Dr. Yang that morphine only dulls the pain down to level seven and after it wears off late at night or early morning, Plaintiff suffers from pain and cannot sleep until the next morning when he can get his next pill.  (Cmp at 17 ¶ 90.)  Dr. Moon submitted a three-physician request for Plaintiff to receive TKR surgery, but it was denied without explanation.  (Cmp at 17 ¶ 91.)

On July 27, 2015, Plaintiff was transferred from CSP to the Richard J. Donovan Correctional Facility in San Diego, California.  (Cmp at 18 ¶ 97.)  On November 9, 2016, Plaintiff had knee replacement surgery with no complications.  (Cmp at 20 ¶ 115.)

## IX.   DISCUSSION - EIGHTH AMENDMENT MEDICAL CLAIM

The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

### A.   Serious Medical Need

A serious medical need is shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id. There is no dispute between the parties that Plaintiff had a serious medical need. (Defts' Points and Authorities, ECF No. 29-1 at 16:25-26; Pltf's Points and Authorities, ECF No. 38 at 18:26-19:10.)

### B.   Defendants' Knowledge of Plaintiff's Serious Medical Need

"Under th[e deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).

Plaintiff asserts that Defendant McCabe had knowledge of Plaintiff's serious medical injury and his need for a knee replacement because Dr. McCabe and Dr. Moon (Plaintiff's Primary Care Provider) agreed that the orthopedist had recommended knee surgery for Plaintiff and thought the request should be presented to Headquarters Utilization Management, which it was. (McCabe's Response to Pltf's Special Interrogatories, set one, Interrogatory no. 16.)[7] Plaintiff also asserts that Defendant Beregovskaya knew that Plaintiff needed a knee replacement because on October 24, 2014, Dr. Beregovskaya approved a Request for Service (RFS) for Plaintiff to receive an orthopedist consultation for knee-replacement surgery. (Pltf's Declaration, ECF No. 39 at 4 ¶ 26 & Exh. at 28.) Defendants have not disputed that they were both aware of Plaintiff's serious medical need.

---

[7] The Court has not received Plaintiff's Special Interrogatories.

### C.      Deliberate Indifference to Risk of Harm

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal citation and quotation marks omitted). "The state of mind for deliberate indifference is subjective recklessness." Pozzi v. Cnty. of Los Angeles, No. 2:20-CV-07035-SVW-PJW, 2020 WL 6586307, at *1 (C.D. Cal. Sept. 9, 2020) (citing Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012)).    To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." Collignon v. Milwaukee Cnty., 163 F.3d 982, 989 (7th Cir. 1998); see also Lamb v. Norwood, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Based on this standard and the facts developed above, the Court finds that Plaintiff has not met his burden to present evidence showing that Drs. McCabe and Beregovskaya were deliberately indifferent in response to Plaintiff's medical need, or that a genuine dispute of fact exists requiring a trial.  The analysis of a medical claim under the Eighth Amendment rests on whether Defendants knew about Plaintiff's serious medical needs, were consciously aware that Plaintiff faced a substantial risk of serious harm to his health, and yet deliberately ignored the risk or otherwise acted unreasonably, causing Plaintiff harm or injury. Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff has not proven that either of the named Defendants treated him with deliberate indifference in violation of the Eighth Amendment. Plaintiff's evidence is not sufficient to overcome the undisputed facts and the deliberate indifferent standard.

### Discussion

Plaintiff asserts that he did not know why Dr. Moon's two Requests for Service were denied, and there was no explanation given or alternate treatment recommended.  However,

Plaintiff later argues that the Requests were denied because Dr. Moon did not provide Headquarters with all of the information required.  Importantly though, the fact that Dr. Moon submitted incomplete paperwork is not evidence that Drs. McCabe nor Beregovskaya were indifferent to Plaintiff's need for surgery.  Defendant asserts that Headquarters Utilization Management decided the process for submitting a RFS with complete information.  Plaintiff argues that defendants should have communicated with Dr. Moon about what was required in the RFS, but Plaintiff has not shown that the defendants behavior demonstrates that they were indifferent to Plaintiff's need for surgery.

The parties disagree about whether the delay in Plaintiff's approval for surgery caused Plaintiff to suffer further injury during the time he waited.  Defendants argue that Plaintiff did not suffer more pain because of the delay because his pain was adequately controlled by the medications Plaintiff took, Tylenol with codeine and Morphine.  Plaintiff, however, argues that the medications did not adequately relieve his pain, and he suffered side effects from the medicines.  Plaintiff provides evidence that crushed Tylenol is difficult to swallow, tastes terrible, causes gagging, regurgitation, nausea, stomach cramps, dizziness, constipation, and painful bowel movements.  (Cmp at 13-14 ¶ 63; Pltf. Decl at 8 ¶ 57.)  On June 19, 2015, Plaintiff was seen by RN McGrew, and Plaintiff reported that his pain level was a constant 8, 9, or 10 and most of the pain was late night or early morning when the medication had worn off, leaving Plaintiff to go four to six hours in pain before taking another pill.  (Cmp at 15 ¶ 75.)  On July 17, 2015, Plaintiff told Dr. Yang that crushed morphine tastes horrible, Plaintiff has difficulty swallowing it, he regurgitates and feels nauseous, and the medicine causes dizziness, stomach cramps, constipation, and painful bowel movements.  (Cmp at 17 ¶ 89.)  Plaintiff also told Dr. Yang that morphine only dulls the pain down to level seven and after it wears off late at night or early morning, Plaintiff suffers from pain and cannot sleep until the next morning when he can get his next pill.  (Cmp at 17 ¶ 90.)  Plaintiff alleges in the Complaint that he was forced to wait for knee surgery for more than a year because Defendants failed to provide him with adequate medical care.  (ECF No. 21 at 8.)  Plaintiff alleges that he suffered serious symptoms from the delay in his surgery, even though Plaintiff and his prison doctors agreed early on that the only treatment

that would relieve Plaintiff's pain was knee-replacement surgery. While the parties clearly disagree, the Court does not find this dispute of fact to be a genuine dispute of material fact that affects the court's ability to analyze and resolve Defendants' motion for summary judgment without trial, as discussed next.

The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Jones v. Rogers, No. 1:21-CV-00340-DCN, 2021 WL 4751416, at *5 (D. Idaho Oct. 12, 2021). To prevail in his claim for deliberate indifference, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that "they chose this course in conscious disregard of an excessive risk to plaintiff's health." Gordon v. Cnty. of Orange, 6 F.4th 961, 970 (9th Cir. 2021) (quoting Jackson, 90 F.3d at 332 (citation omitted), overruled in part on other grounds by Peralta, 744 F.3d at 1076.

As discussed previously, Drs. Beregovskaya and McCabe both agreed that :

> "The medically acceptable practice, as well as the practice that accords with CDCR guidelines, to treat an injury like plaintiff's left knee pain is to assess the injury, proceed through conservative treatment until it is exhausted, and then proceed to surgical assessment and intervention.

> Mr. Collins received appropriate medical care while housed at CSP-Corcoran. His care team persisted in their attentiveness in following him up and getting appropriate tests and consultations and accomplishing a successful medical outcome. Larnell Collins received from practitioners caring for him in CDCR and private offices reasonable, necessary, and medically acceptable care and treatment. This medical care was consistent with community standards and consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of my medical profession."

(Decl. of Beregovskaya, ECF No. 29-3 at 7 ¶¶ 57, 59; Decl. of McCabe, ECF No. 29-2 at 6 ¶¶ 46, 48.)

Dr. Beregovskaya further declared:

"On February 23, 2015 Dr. Moon submitted a RFS for a total knee replacement surgery for Plaintiff. On February 25, 2015, I reviewed and denied Dr. J. Moon's February 23, 2015 RFS, noting that Dr. Moon did not revise the submitted information and that the February 23, 2015 RFS appeared to be a copy of the February 12, 2015 RFS.

On March 30, 2015, a third RFS for total knee replacement surgery for Plaintiff was submitted by Dr. J. Moon. 47. On April 24, 2015, the March 30, 2015, RFS was reviewed by HQ UM and was not approved, noting that it did not meet InterQual criteria."

(Decl. Beregovskaya, ECF No. 29-3 at 6-7 ¶¶ 41, 43, 46, 47.)

Dr. McCabe further declared:

I graduated from medical school more than 30 years ago. I am licensed by the State of California as a medical doctor and held a valid license as a medical doctor at all times relevant to the Complaint in this lawsuit. I have been employed as Chief Physician & Surgeon at Corcoran State Prison by the California Department of Corrections and Rehabilitation (CDCR), and worked in that capacity at Corcoran State Prison (CSP-Corcoran) during all times relevant to the Complaint.

On April 8, 2014, Plaintiff's primary health care provider, Dr. J. Moon, submitted a Request for Service (RFS) requesting physical therapy for Plaintiff. On April 8, 2014, Plaintiff's primary health care provider, Dr. J. Moon, submitted a RFS requesting an MRI for Plaintiff.  On April 11, 2014, I approved the RFS for physical therapy submitted by Dr. J. Moon.  On April 11, 2014, I approved the RFS for a MRI diagnostic test for Plaintiff submitted by Dr. J. Moon."

(Decl. of McCabe, ECF No. 29-2 at 1-2 ¶ 2, 2: ¶¶ 9-12.)

The Court finds that Plaintiff has failed to establish, other than by conjecture and his lay non-medical opinion, that Drs. Beregovskaya and McCabe were deliberately indifferent under the Eighth Amendment, or that either of the Defendants acted

unreasonably in response to the knowledge that Plaintiff faced a substantial risk of serious harm.

Importantly, Plaintiff is not competent to provide medical opinion evidence sufficient to create any triable issue of fact in this case.  <u>See</u> Fed. R. Civ. P. 56(c)(4) ("affidavit or declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").   Here, outside of Plaintiff's chronicling the sequence of events, describing the medical evaluations and treatments he received , the statements made to him by the defendants, and the pain he experienced, his lay opinion testimony regarding the medically acceptable standard of care as it relates to that treatment,  and more importantly as it relates to the standard of deliberate indifference, is not admissible under Rule of Evidence 701 precisely because he is a layman and not a medical expert:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Accordingly, based on the foregoing, the Court finds that Defendants' motion for summary judgment on Plaintiff's § 1983 claim of deliberate indifference in violation of the Eighth Amendment should be granted.

///

///

## X.   CONCLUSION AND RECOMMENDATIONS

The Court finds and shall recommend that based on the undisputed facts, Defendants' motion for summary judgment, filed on August 30, 2021, should be granted.

Therefore, based on the foregoing, it is **HEREBY RECOMMENDED** that:

1.     The motion for summary judgment filed by Defendants Drs. Beregovskaya and McCabe on August 30, 2021, be GRANTED as to Plaintiff's § 1983 claims against them under the Eighth Amendment;

2.     Summary judgment be granted to Defendants Drs. Beregovskaya and McCabe; and

3.     The Clerk of Court be directed to enter judgment in favor of Defendants and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **July 23, 2022**        **/s/ Gary S. Austin**

                                    UNITED STATES MAGISTRATE JUDGE